Johnson v. Martin Purdue, Appeal Number 23-2478. Okay, Mr. Weiss, whenever you're ready. Good morning, Your Honors. May it please the Court. My name is Samuel Weiss. I represent the appellant, Mr. Kevin Rasheed Johnson. I'll try to reserve three minutes for rebuttal. Mr. Johnson was entitled to due process, both notice and an opportunity to be heard before judgment was entered against him. He didn't receive notice. He certainly didn't receive an opportunity to be heard. This record is replete with his inability to receive mail from the District Court, from his ability to receive mail from the District Court in his companion litigation, also in the Southern District of Indiana, with his ability to receive mail from defendants, with his ability to send mail. There's overwhelming evidence of this and it's basically entirely unrebutted. The summary judgment motions that were eventually granted, defendants moved for summary judgment. Mr. Johnson did not receive them as sworn under penalty of perjury, unrebutted. He found out that they had been filed basically by happenstance and filed a notice with the District Court that purportedly motions of summary judgment had been filed against him, but he had not received them. The defendants, upon learning of this, did nothing. The District Court was obligated to deny those motions for summary judgment without prejudice and set a deadline for them to reserve those motions. When defendants reserved those motions, they did so in the exact same way, which is to say first-class mail, not even certified mail or process server or any other step that they could have possibly taken. But they sent them to the Virginia address, right? That's right. But that's the same address that they had sent the first time. Yeah, but it comes after that January 19th, 2023 order where the district judge says, I'm striking the prior motions. You can refile them. Right. And it says. And after the court acknowledged that there was an updated address. Right. Well, I'm not sure that order. It does instruct what address to send them to, but it doesn't acknowledge that they were sent to a previous to an incorrect address previously. No, I think I think you're right, Mr. Weiss, that there was a mess in the past. Right. But then the district court tried to make an effort on January 19th, you know, by striking the prior motions and trying to reset this a little bit going forward. And then and then Mr. Johnson himself in his motion to vacate acknowledges that he received that January 19th order. He did. Right. So that's where it gets tricky for him, where he says, I didn't have any idea this stuff was going. You know, this is going on. So that's that's true. The district court, to its credit, did take that step denying. And what the what the district court did there is the district court denied the motions. It gave a deadline of 14 days for the defendants to refile. And since this is language that will come up, it also made a procedural point to Mr. Johnson that he had filed a notice previously. He's operating pro se, obviously incarcerated, and said that he had filed a notice. And they said, in general, if you want the court to do something, don't file a notice, file a motion. So he received that mail. However, he then did not receive the motions for summary judgment. And so I think and defendants, importantly, took no steps to ensure that he actually would receive them. So the defendants certainly didn't take that as any kind of insistence to try something new in actually succeeding. Mr. Rice, the breakdown here is troubling and seems to have been recurring. And we'll ask the defense lawyers about that. I'd like you to answer a point that you didn't seem to answer in your reply brief, where the defense says, in essence, you haven't actually even tried to show that the grant of summary judgment was incorrect on the merits. And what I have in mind along those lines is the Supreme Court's case in Codd against Velger, an old, well, 1970s. It's not that old, but procedural due process case where a public employee said he wanted a name-clearing hearing but didn't actually dispute the factual correctness of the information. The court said there's no harm here. Right. So it's true that defendants made an argument that we've waived by not making any sort of merits argument. I think that demonstrates the due process violation. Well, that's a little too clever, frankly. What I'm looking for is what would be the point of a remand here. Your Honor, Mr. Johnson, to present, has never gotten a copy of these motions for summary judgment. You presumably have seen them. I have seen them, yes. I do not represent Mr. Johnson in the trial court. Of course not. And so I do not know what kind of record that he would build in opposition to those motions for summary judgment. And neither does the district court, and neither do defendants, because he didn't receive his opportunity to be heard. Why should we not treat that then, though? It's just a waiver of any argument that there was prejudice here under the logic of COD. Well, I think, and you'll forgive me, I'm not familiar with COD. I'd be happy to file a supplemental brief on it. Here, because of the lack of notice and because of the lack of opportunity to be heard, Mr. Johnson was not able to build a record that could block summary judgment. I understand that, but I'm looking for at least a, look, we see, as you know as well as anybody, hundreds of appeals from prisoners unhappy with their medical treatment. The standards are so difficult, it's very hard to avoid summary judgment in those.  And I'm not trying to excuse what seems to have happened here, but I'm also trying to understand what would be the point of sending this back. I ordinarily think that's something that an appellant needs to show. Right. I think there's a doctrinal point and a pragmatic point. I think the doctrinal point is that entries of judgment in violation of due process are void. The entry of judgment here was void, which therefore merits at the very least a vacater and remand. And the pragmatic point is that Mr. Johnson was unable to introduce, and forgive me for repeating myself, was unable to build any sort of record to oppose summary judgment. And therefore, an affirmance on those grounds would be essentially rewarding prison officials for successfully obstructing him from letting him use it. Essentially, these are my words, not yours, but just push back if you don't like the character. You're essentially arguing that the due process violation, the lack of notice, it's a structural error. Yes. And it's not even subject to a prejudice analysis. That's right, Your Honor. That's basically your argument. Okay, what's the best authority you have for that? Well, I think to take what we use as an analogous case, which is New York Life Insurance, which is the Fifth Circuit. Again, I'm relying on more analogous facts, obviously, that are sort of foundational. I understand it's at a high level of abstraction. Judgments entered inconsistent with due process are void. That is a correct binding statement. I understand that it's vague. In New York Life Insurance, we had a very similar case where an entry of judgment was sent to an address that the court and the defendants had reason to know would not actually get to the person. And the Fifth Circuit reversed and remanded without any sort of merits analysis. Mr. Weiss, can you address briefly the jurisdictional point that the defendants raised? That is that you needed to file an amended notice of appeal or, at a minimum, a new notice of appeal to bring this issue to the court. Yes, Your Honor. I think the judgment that we are appealing is the entry of summary judgment, not the denial of Rule 60. But the issue of notice came up in the context of the Rule 60 motion, right? Well, so it's – and I understand this is a tricky line for the court to walk, because when we're talking about appellate jurisdiction in this context for Appellate Rule 3 and Appellate Rule 4, the Supreme Court, this Court, and the Rules Committee have both insisted that, obviously, this deals with jurisdiction, which typically you think of as being very strict. And also this Court and the Supreme Court and the Rules Committee have insisted that this needs to be lenient and pragmatic and focus on notice and prejudice to defendants. I think the line – and we cite some Sixth Circuit cases that we think walk that line relatively well – between when does – when is it sufficient that you appeal the original grant of summary judgment? And the line, even if you didn't appeal the Rule 60 order afterwards. And that was if this was a recurring issue as opposed to something that's brand new and that came up in the post-judgment filing. So we can think of something like a motion for a new trial where that order itself would have to be appealed if you were seeking a new trial, a motion for attorney's fees, those sort of post-judgment motions. Here what we have is a vacator based on lack of notice. This very same – not only did we have – did Mr. Johnson raise these issues over and over again. They were even raised for the Court for defendants by mail repeatedly getting mounts back. But even the first motion for summary judgment was denied on the grounds that he did not receive notice. So we think this is the sort of recurring issue. We're not asking this Court to exercise jurisdiction over the denial of the Rule 60 motion but simply to look at the evidence in the Rule 60 motion in determining whether that judgment was void. Okay, very well. Mr. Rice, we'll give you a minute on rebuttal. Thank you very much, Your Honors. Let's hear from Ms. Recker. Good afternoon. May it please the Court. I'd like to start with the jurisdictional issue. This Court doesn't have jurisdiction over the order denying Johnson's post-judgment motion, which is actually the order that Johnson challenges on appeal, not necessarily the summary judgment order. And that's because Johnson did not file an amended notice of appeal or a new notice of appeal after the Court denied his motion. Johnson argues that he is just challenging the summary judgment order, but that's not true for three reasons. First, one of Johnson's main arguments is that the district court erred in how it construed his post-judgment motion. He spends a significant part of his briefing discussing that. Second, he challenges that he was denied due process when the district court entered the summary judgment order, and this is a challenge that he first raised in the post-judgment motion. In addition, the evidence that he relies on, which is his sworn statement, comes in with that post-judgment motion. And then also Johnson does not challenge the merits of the Eighth Amendment claim. Johnson does cite, too, some Sixth Circuit cases, but those cases hold that issues or orders that are raised prior to the last appeal judgment come in, that the Court has jurisdiction over those, but as I just explained, that's not the case here. Also, Johnson argues that the Court should liberally construe Rule 4 to give it jurisdiction, but the cases he cites deal with liberally construing Rule 3, specifically Rule 3c, which is the content of the notice of appeal and not the actual filing of a notice of appeal under Rule 4. So for those reasons, this Court should dismiss the appeal and not address the merits of Johnson's due process claim. But briefly, turning to the due process violation argument, Johnson was not denied due process because the defendants served Johnson at his last known address in compliance with Civil Rule 5. This was where Johnson had received the district court's orders, both the January 2023 order and the order bringing— Suppose he can prove conclusively it never got to him. Do you think that's okay, that we should just say, well, because the defendants sent it to him, that's good enough? If Johnson can actually rebut the presumption that he received the motion— He has submitted an affidavit to that effect, correct? He has submitted, yes, an affidavit saying he never received it. Right. But that shouldn't be enough for judgment to be void because if it is, then any litigant could just simply say, I never received it. Well, what more is needed? He could have presented his mail logs possibly from the prison. Why can't the defense come up with those? It's not the defense's burden, Your Honor. Why can't you come up with them? Look, this is a guy who's been transferred and transferred and transferred. He's an Indiana prisoner, right? He's not, Your Honor. He's a Virginia prisoner, and he is incarcerated in Virginia. He was in Indiana at the time of the— Why was he in Indiana? He was in Indiana under the Compact, interstate prison. Had he been convicted of anything in Indiana? No, no. He was always a Virginia prisoner. Okay. So the department, or the defendants in this case, didn't necessarily have his mail logs readily available to them. Well, presumably there would be a degree of cooperation between Departments of Corrections who were sending prisoners back and forth. Yes, that's probably true. But, again, it's not the defendant's burden. It's his burden to show that he never received— Well, he came up with an affidavit with what he knows. How is he supposed to get the logs, particularly within the short window between the time he receives the judgment and the time that he would need to respond with either a notice of appeal or a Rule 59 or 60 motion? Well, again— And when does he even look for it? I mean, does he know when the motion was supposed to have been filed? Yes, he knew when the summary judgment motions, yes. He admittedly received the January order, which directed the parties— No, the later one. Yes, that's what I'm talking about. You mean the second motions for summary judgment? Yes, that's what I'm talking about, Your Honor. In January, when the court ordered the defendants to refile— And you think he's going to get good cooperation from the Virginia prison officials in giving him access to the mail logs? I mean, I think that if he requested them that— That sounds very naive to me, frankly. I mean, I've seen in other cases prisoners requesting things from the prison. They just submit a request. I don't know how Virginia works. I don't know exactly how their mail— It appears that all of the mail goes to the central distribution center, and it's logged, and so I would think that they would probably have a record of that. When he, in his motion to vacate, that question about whether it's 59 or 60, when he says, I did receive the court's prior order, referring to that January 2023 order, the one thing that struck me in looking at this is that if what he said is true, I think we should take him at his word, he did receive the prior order, he's aware of the prospect of new summary judgment motions going to be filed, right? Yes. And the one thing, the one fact that, in my mind, may save it from the very rightful concern that Judge Hamilton is expressing is his address does appear to remain static at that point in time, but he never sends anything into the district court at all. And the district court, to her credit, she waited, what was it, three or four months or something? Five months, Your Honor. Five months before ruling on this. Now, that could be because that district court is extremely busy, but that, whatever the reason is, that time provided a window, even if he's going to send in something late, saying the mail is all haywire here, it took me forever to get this, but nothing came in. That's true, Your Honor. And he knew, Johnson knew that he could request a copy of the docket to check the status of the case because he had done so in the past, in between when the defendants filed the initial motion for summary judgment and when the court denied it and issued the January order. So he knew how to request a copy of the docket and check on the status of the case. And that's, I believe, why the court denied his motion was because he did nothing. If he hadn't received the motion, he had acknowledged he received the January order, which directed the parties to refile the motions for summary judgment, and then when he didn't receive anything, he did nothing. And I do want to correct one thing that opposing counsel said. The initial motions for summary judgment that defendants sent were not mailed to the exact same address as the second ones. At some point in between there, his address updated to the Virginia Mail Distribution Center, and so the second motions were sent there, which is the exact place he received the court's orders. Based upon the change of address that he sent in and then the court acknowledged in that January order? Yes. That was the address to which everything got sent going forward? Yes, Your Honor. Yes. Prior to that, I think that he had moved around from a couple different prisons in Virginia, and I believe there was also one in Ohio. But since that January order, his address was always the Virginia Central Mail Distribution Center. So based on those circumstances, Johnson had an adequate opportunity to respond, to inquire if he hadn't received the motions. So even if the court gets to the due process argument, which, again, we don't believe the court has jurisdiction to do, we would ask that you affirm the district court's denial of his motion. There are no further questions. Okay, very well. Ms. Rucker, thanks to you. Mr. Weiss, we'll give you that minute. I promised you. Thank you, Your Honor. As a first point, my friend on the other side said several times that the court ordered the defendants to refile. The court did not order the defendants to refile. It denied the motions. It said they shall have 14 days to refile. The next sentence is, Mr. Johnson, upon being served, has 28 days to respond. He hasn't gotten—he didn't get those 28 days then. He hasn't gotten those 28 days now. Defendants were not obligated to file those motions. The point on mail logs, I represent people in prison for a living. I've never heard of incarcerated plaintiffs being given their mail logs. This is information that would have been readily accessible for defendants. They didn't go and get it. And this point on flipping the burden, I don't quite understand that. Normally, because I think the district court—and I'm obviously sympathetic to the district court. The district court was dealing with a troubling situation here and trying to do its best with imperfect communication. But the district court is the one that flipped the burden here. When the district court said, Mr. Johnson could have done more, and that's true for any litigant. Pacer is public. Anybody could check if they've received a motion for summary judgment against them that was never given to them. Any litigant could do that. The question isn't whether he could have done something more when he did a fair amount. It's whether defendants took reasonable actions to make sure that he received copies of a motion for an entry of judgment before judgment was received. Unless there are other questions, Your Honors. Okay, Mr. Weiss, thank you very much. We appreciate your representation, Mr. Johnson. Ms. Rucker, thanks to you, we'll take the appeal under advisement. Thank you very much.